**NO. 26-10127**

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

---

SPECTRUM WT

*Plaintiff-Appellant*,

v.

WALTER WENDLER,

*Defendant-Appellee*.

---

# JOINT PETITION FOR INITIAL HEARING EN BANC

---

On Appeal from the United States District Court for the Northern District of Texas, Amarillo Division,
Civil Action No. 2:23-CV-48
Hon. Matthew J. Kacsmaryk, Presiding

---

JT Morris
*Counsel of Record*
Samuel Rudovsky
FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 Pennsylvania Ave., S.E.
Ste. 340
Washington, D.C. 20003
Tel: (215) 717-3473
jt.morris@fire.org
sam.rudovsky@fire.org

Sara Berinhout
Adam Steinbaugh
FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Ste. 900
Philadelphia, PA 19106
Tel: (215) 717-3473, ext. 251
sara.berinhout@fire.org
adam@fire.org

*Attorneys for Plaintiff-Appellant*

(Counsel for Appellee on next page)

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

William R. Peterson
Solicitor General

William F. Cole
Principal Deputy Solicitor General
William.Cole@oag.texas.gov

Christopher J. Pavlinec
Assistant Attorney General

*Counsel for Appellee*

## CERTIFICATE OF INTERESTED PERSONS

The case number and style of the case is *Spectrum WT v. Wendler* (USDC Civil No. 2:23-CV-48, Northern District of Texas).

Counsel of record certifies that the following listed persons or entities described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made so the judges of this Court may evaluate possible disqualification or recusal.

**Plaintiff-Appellant**

Spectrum WT

**Attorneys for Plaintiff-Appellant**

JT Morris
Conor T. Fitzpatrick
Samuel Rudovsky
Foundation for Individual Rights and Expression
700 Pennsylvania Ave. SE, Suite 340
Washington, D.C. 20003

Adam Steinbaugh
Sara Berinhout
Jeffrey Daniel Zeman
Foundation for Individual Rights and Expression
510 Walnut Street, Suite 900
Philadelphia, PA 19106

**Defendant-Appellee**

Dr. Walter Wendler

**Attorneys for Defendant-Appellee**
William R. Peterson
William F. Cole
Christopher J. Pavlinec
Monroe David Bryant, Jr.
Zachary Berg
Munera Al-Fuhaid
Alexia Baker
Office of the Attorney General of Texas
P.O. Box 12548
Austin, TX 78711

**Former Parties and Other Interested Parties**

Barrett Bright
Marcus Stovall f/k/a Lauren Stovall
John Sharp
Glenn Hegar
Robert L. Albritton
James R. Brooks
Jay Graham
Michael A. Hernandez, III
Tim Leach
Bill Mahomes
Elaine Mendoza
Michael J. Plank
Cliff Thomas
Demetrius L. Harrell, Jr
West Texas A&M University
Texas A&M University System

Respectfully,

/s/ JT Morris
Counsel of Record for
Plaintiff-Appellant

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS .............................. iii

TABLE OF CONTENTS .................................................................. v

TABLE OF AUTHORITIES ........................................................... vi

INTRODUCTION and RULE 40(b)(2) STATEMENT .................... 1

STATEMENT OF THE PROCEEDINGS AND FACTS.................. 4

REASONS FOR GRANTING INITIAL HEARING EN BANC ...... 9

I. Courts in this Circuit are Divided Over the Proper Application of *CLS v. Martinez*. ........................................................ 9

II. The District Courts are Divided Over How to Determine Whether Conduct is Inherently Expressive. ............................ 14

III. These Issues Are Important and Recurring, Requiring the En Banc Court's Intervention. ....................................................... 17

CONCLUSION .......................................................................... 19

CERTIFICATE OF SERVICE ...................................................... 21

CERTIFICATE OF COMPLIANCE .............................................. 22

# TABLE OF AUTHORITIES

## Cases

*Chiles v. Salazar*, 146 S. Ct. 1010 (2026) .............................................. 12

*Christian Legal Society v. Martinez*, 561 U.S. 661 (2010).......... 1, 5, 9, 12

*Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747 (5th Cir. 2010) ..... 10

*HM Fla.-ORL, LLC v. Governor of Fla.*, 137 F.4th 1207 (11th Cir. 2025) ........................................................................................................ 18

*HM Fla.-ORL, LLC v. Sec'y of Fla. Dep't of Bus. & Pro. Regul.*, 160 F.4th 1282 (11th Cir. 2025) .............................................................................. 18

*Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*, 515 U.S. 557 (1995) ................................................................................ 14, 15

*Imperial Sovereign Ct. of Montana v. Knudsen*, 170 F.4th 820 (9th Cir. 2026) ........................................................................................... 18

*Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200 (3d Cir. 2001)............. 9

*Spectrum WT v. Wendler*, 151 F.4th 714 (5th Cir. 2025) ............... passim

*Spectrum WT v. Wendler*, 157 F.4th 673 (5th Cir. 2025) ..................... 1, 5

*Spectrum WT v. Wendler*, No. 23-10994, 2026 WL 184215 (5th Cir. Jan. 20, 2026) ...................................................................................... 1, 6

*Speech First, Inc. v. Cartwright*, 32 F.4th 1110 (11th Cir. 2022)............ 9

*Spence v. Washington*, 418 U.S. 405 (1974) .......................................... 15

*Tex. A&M Queer Empowerment Council v. Mahomes*, 772 F. Supp. 3d 792 (S.D. Tex. 2025) ............................................................................. passim

*Texas v. Johnson*, 491 U.S. 397 (1989) ............................................. 14, 15

*Woodlands Pride v. Paxton*, 168 F.4th 293 (5th Cir. 2026)................ 8, 16

*Woodlands Pride v. Paxton*, 694 F. Supp. 3d 820 (S.D. Tex. 2023)........ 16

**Rules**

Fed. R. App. P. 40(b)(2)(A) .................................................................... 13

Fed. R. App. P. 40(b)(2)(A)(D) ............................................................. 9, 14

Fed. R. App. P. 40(g) ......................................................................... 3, 9, 14

**Other Authorities**

Jessica Priest, *University of Texas System bans drag shows in campus facilities*, Texas Tribune (Mar. 18, 2025) ............................................ 17

Matthew Winter, *GLAD drag show blocked from performing on campus after drag pause was lifted*, North Texas Daily (Mar. 19, 2026) ........ 17

Order Lifting Stay, *Tex. A&M Queer Empowerment Council v. Mahomes*, No. 25-20108 (5th Cir. Apr. 7, 2026), ECF No. 44 ................................ 8

Order Granting Motion to Hold Appeal in Abeyance, *Tex. A&M Queer Empowerment Council v. Mahomes*, No. 25-20108 (5th Cir. May 27, 2025), ECF No. 20 ............................................................................ 8

Notice of Appeal, *Tex. A&M Queer Empowerment Council v. Mahomes,* No. 25-20108 (5th Cir. Apr. 2, 2025), ECF No. 1 .................................. 8

Mandate, *Woodlands Pride v. Paxton*, No. 23-20480 (5th Cir. Apr. 7, 2026), ECF No. 323 ........................................................................ 8

## INTRODUCTION and RULE 40(b)(2) STATEMENT

Plaintiff Spectrum WT and Defendant Walter Wendler respectfully jointly petition this Court for initial hearing en banc. This appeal presents questions of exceptional importance that have divided judges of this Circuit and that will impact students, faculty, and administrators at over 100 public colleges and universities across the Circuit. This Court recognized as much just last year when it *sua sponte* ordered rehearing en banc of Spectrum's appeal from the denial of its preliminary injunction motion. *Spectrum WT v. Wendler*, 151 F.4th 714 (5th Cir. 2025), *reh'g en banc granted, op. vacated*, 157 F.4th 673 (5th Cir. 2025) ("*Spectrum I*"). The district court's intervening final judgment mooted the en banc Court's consideration of the vital legal issues in that appeal just days before oral argument. *Spectrum WT v. Wendler*, No. 23-10994, 2026 WL 184215, at *1 (5th Cir. Jan. 20, 2026).

This appeal from that final judgment centers on the same two legal issues, and those issues continue to warrant the attention of the full Court. *First*, this appeal presents a dispute over the applicability of *Christian Legal Society v. Martinez*, 561 U.S. 661 (2010) (*CLS*), and whether it permits university officials to limit student activities and

expression—specifically, drag-show performances—in certain university spaces based on asserted concerns over "respect," "demean[ing] women," "harassment" and "discriminat[ion] against womanhood." ROA.4437–39. *Second*, this appeal raises a crucial antecedent question about whether drag-show performances constitute inherently expressive conduct protected by the First Amendment.

The first issue divided the members of this Court in *Spectrum I*, and both issues have divided district courts in this Circuit in cases currently on appeal. In this case, for example, the district court held that the student drag-show performance at issue was not inherently expressive conduct protected by the First Amendment; that the University space at issue was a limited public forum; and that the University's exclusion of the drag show from that forum was both reasonable and viewpoint neutral—and therefore constitutional under *CLS*. ROA.3857–86.

By contrast, in a related case on appeal in this Court, the district court reached the opposite conclusion on each of these issues, holding that drag shows are inherently expressive conduct; that the university space at issue was a designated public forum; that, even if the university

forum at issue was a limited public forum, the exclusion of the student drag show was viewpoint discriminatory and did not pass constitutional scrutiny under *CLS*; and that, in any case, strict scrutiny applied, which the government did not satisfy. *Tex. A&M Queer Empowerment Council v. Mahomes*, 772 F. Supp. 3d 792, 800–10 (S.D. Tex. 2025), *appeal pending* No. 25-20108 (5th Cir.) ("*QEC*").

Because these issues are important, recurring, and presented in two cases currently on appeal in this Court, the parties submit that initial, consolidated en banc review of both cases will (1) conserve judicial resources, (2) secure uniformity, and (3) guarantee that university officials, students, and other courts receive the benefit of this Court's plenary consideration. *See* Fed. R. App. P. 40(g). Accordingly, the parties are simultaneously filing a joint petition for initial hearing en banc in *QEC*.

## STATEMENT OF THE PROCEEDINGS AND FACTS

**The Spectrum litigation.**

This appeal concerns Spectrum's First Amendment challenge to President Walter Wendler's prohibition on student-organized drag shows at West Texas A&M University. In 2023, Wendler sent a campus-wide email cancelling Spectrum's planned drag performance at Legacy Hall, a University event space. President Wendler stated that "West Texas A&M will not host a drag show," and explained his view that drag performances "disrespect" and "demean" women and constitute impermissible "harassment" and "discriminat[ion] against womanhood." ROA.4437–39. After Spectrum applied to hold another performance in 2024, Wendler again sent a campus-wide email cancelling the show. ROA.4441.

The district court denied the Plaintiffs' motion for a preliminary injunction, concluding that the First Amendment does not protect drag shows, that Legacy Hall is a limited public forum, and that the policy was not viewpoint discriminatory. ROA.876–87.

Plaintiffs appealed, and in August 2025, a divided panel reversed. *Spectrum I*, 151 F.4th at 733. The panel majority held that Spectrum was likely to succeed in showing the First Amendment protects its planned

drag performance because Legacy Hall was a designated public forum and President Wendler failed to satisfy strict scrutiny to justify a content-based restriction on protected expression. *Id.* at 721–29. Judge Ho dissented, reasoning that Legacy Hall is a limited public forum, *id.* at 738–39 (Ho, J., dissenting), and that *CLS* binds this Court to "respect university officials when it comes to regulating student activities to ensure an inclusive educational environment for all," *id.* at 733 (citing *CLS*, 561 U.S. 661).

Thereafter, this Court held the mandate and *sua sponte* ordered rehearing en banc, vacating the panel opinion. *Spectrum*, 157 F.4th at 673. After the parties completed briefing, the Court set argument for January 23, 2026. *See Spectrum I*, ECF No. 302.

Soon after the panel issued its opinion, and before the Court's decision to hear the case en banc, the trial court held a status conference and set an expedited discovery and trial schedule. ROA.22, 1261–1277, 1321–1337. On January 14, 2026, a day after denying Spectrum's motion for summary judgment, ROA.3832–40, the district court held a one-day bench trial on Spectrum's request for a permanent injunction and declaratory relief. Three days later, the district court entered final

judgment and issued findings of fact and conclusions of law denying Spectrum's requested relief. ROA.3842–88.

The district court concluded that the First Amendment does not protect Spectrum's drag performances; Legacy Hall is a limited public forum; the University's policy is not viewpoint discriminatory or a prior restraint; and *CLS* permits President Wendler to prohibit Spectrum's performances at Legacy Hall based on his concerns about harassment of women and sex discrimination. ROA.3842–88.

Because the district court entered final judgment, Spectrum moved to dismiss its pending interlocutory appeal before this Court as moot. *Spectrum I*, ECF No. 323 at 2–3. On January 20, 2026, this en banc Court granted that motion. *Spectrum*, 2026 WL 184215, at *1.

Plaintiffs timely noticed this appeal on February 12, 2026. ECF No. 1. Because this Court granted appellants' unopposed motion to dismiss the appeals of Barrett Bright and Lauren Stovall, Spectrum WT is the only remaining appellant. ECF No. 39, No. 40.

**The Texas A&M Queer Empowerment Council litigation.**

While *Spectrum I* was pending before the panel, the Texas A&M University System Board of Regents issued a policy prohibiting student-

organized drag shows at any Texas A&M University campus. Echoing West Texas A&M President Wendler's reasoning, the System policy lists concerns that drag shows "demean[] women" and create "a hostile environment for women contrary to System anti-discrimination policy and Title IX[.]" *QEC*, 772 F. Supp. 3d at 799.

Thereafter, the Texas A&M Queer Empowerment Council (QEC)—a student organization at Texas A&M University that hosts a drag show on campus called "Draggieland"—filed a lawsuit in the Southern District of Texas challenging on First Amendment grounds Texas A&M's cancellation of its drag show under the System policy. *Id.* at 797–99.

The district court issued a preliminary injunction against enforcement of the policy. *Id.* at 813. The court concluded that QEC was likely to succeed on the merits, holding that drag shows are inherently expressive conduct protected by the First Amendment, *id.* at 800–03, and that the System policy banning them likely violates the First Amendment as a viewpoint-based prior restraint that fails strict scrutiny, *id.* at 803–10. Unlike the district court in *Spectrum*, the district court in *QEC* characterized the university forum at issue (a university theater) as a designated public forum rather than a limited public forum and therefore

rejected the argument that the System's anti-discrimination policies and Title IX justified prohibiting campus drag performances. *Id.* at 808–09.

The Texas A&M System defendants appealed. *Tex. A&M Queer Empowerment Council v. Mahomes,* No. 25-20108 (5th Cir. Apr. 2, 2025), ECF No. 1 ("*QEC* Appeal").

On May 27, 2025, this Court granted the Defendants' motion to hold the *QEC* Appeal in abeyance pending this Court's decisions in *Spectrum I* and *Woodlands Pride, Inc. v. Paxton*, No. 23-20480 (5th Cir.), another case concerning drag shows and the First Amendment. *QEC*, No. 25-20108, ECF No. 20. A panel of this Court issued an opinion in *Woodlands Pride* on November 6, 2025, and later issued a substitute opinion after denying panel rehearing on February 25, 2026. *Woodlands Pride v. Paxton*, 168 F.4th 293 (5th Cir. 2026). The mandate in *Woodlands Pride* issued on March 18, 2026. *Woodlands Pride*, No. 23-20480, ECF No. 323.

On April 7, 2026, this Court lifted the stay and issued a briefing schedule in the *QEC* Appeal. No. 25-20108, ECF No. 44.

## REASONS FOR GRANTING INITIAL HEARING EN BANC

This appeal presents two questions of exceptional importance concerning application of the First Amendment at public universities that have divided members of this Court and district courts in this Circuit. The Court should grant the petition to remedy the confusion and "secure" the "uniformity" of its precedent on these questions of "exceptional importance." Fed. R. App. P. 40(b)(2)(A)(D), 40(g).

### I. Courts in this Circuit are Divided Over the Proper Application of *CLS v. Martinez.*

In *CLS*, the Supreme Court held that a public-university's "access barrier" to a "limited public forum" must be "reasonable and viewpoint neutral" to survive constitutional scrutiny. 561 U.S. at 679. In at least three ways, application of this principle has divided courts in this Circuit and members of this Court—including the panel in *Spectrum I* and the district courts in *Spectrum* and *QEC*—in the context of university policies restricting campus drag-show performances due to asserted concerns about discrimination and harassment.[1]

[1] Two of this Court's sister circuits have addressed the constitutionality of campus anti-discrimination and harassment policies, though not through the framework of *CLS*. *See Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1125-27 (11th Cir. 2022); *Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 204 (3d Cir. 2001).

To start, courts in this Circuit are confused about how to characterize the university forum at issue. *See Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 758 (5th Cir. 2010) ("The action—in this case and most others—exists at the line between designated and limited public forums."). For example, the panel majority in *Spectrum I* held that *CLS* was inapplicable because Legacy Hall is a designated public forum rather than a limited public forum. 151 F.4th at 728–29. That classification decision hinged on the fact that the University had permitted what the majority deemed were similar activities in the past and because the University's reservation policy did not limit expression to certain topics or speakers. *Id.* The district court in *QEC* engaged in a similar forum analysis, holding that "Rudder Theatre is a designated public forum" because, despite the University's reservation system, the record did not reflect prohibitions for any past activities and past uses of the forum were similar to QEC's proposed drag show. 772 F. Supp. 3d at 804.

Conversely, the panel dissent in *Spectrum I* reasoned that Legacy Hall is a limited public forum based on the University's reservation system and its right to refuse access for violations of University policy.

151 F.4th at 738 (Ho, J., dissenting). The dissent reasoned it was irrelevant that the University had not prohibited other student activities, because in the dissent's view, the same was true in *CLS*. *Id.* at 739. Similarly, after trial the district court in *Spectrum* held that, based on the University's reservation system, its stated values, the nature of the proposed performance, and the past uses of the space, Legacy Hall is a limited public forum. ROA.3881–86.

These diverging forum analyses led to application of different standards of constitutional scrutiny. Because it found that Legacy Hall is a designated public forum, the panel majority in *Spectrum I* concluded that *CLS*'s lower standard of review was inapplicable and applied strict scrutiny. 151 F.4th at 727–29. Likewise, after holding that Rudder Theater is a designated public forum, *QEC*, 772 F. Supp. 3d at 803–04, the district court in *QEC* subjected Texas A&M's policy to strict scrutiny, *id.* at 808–09. By contrast, both the panel dissent in *Spectrum I* and the district court here found Legacy Hall to be a limited public forum and applied *CLS*'s lower "reasonableness" standard. *See* 151 F.4th at 733–35 (Ho, J. dissenting); ROA.3867–79, 3881–86.

In these cases, the choice of the standard of review was pivotal: under strict scrutiny, the panel majority in *Spectrum I* and the district court in *QEC* held that the policies were not likely to survive constitutional scrutiny; but under *CLS*'s lower "reasonableness" standard, the panel dissent in *Spectrum I* and the district court after trial concluded they would.

Beyond forum analysis and the standard of review, these courts have splintered on a third issue: whether the university policies prohibiting drag performances are viewpoint-discriminatory. *See Chiles v. Salazar*, 146 S. Ct. 1010, 1021 (2026) (describing the First Amendment's prohibition on viewpoint discrimination); *CLS*, 561 U.S. at 683–85 (requiring restrictions in limited public fora to still be viewpoint neutral).

In *Spectrum I*, the majority did not expressly consider the question of viewpoint discrimination, although it remarked that "[o]n the record so far, President Wendler's objections were not to the message but to the way it would be delivered." 151 F.4th at 728. The dissent reasoned that President Wendler's policy was viewpoint neutral. *Id.* at 738 (Ho., J. dissenting) (stating that "there's no evidence of discriminatory animus or

selective enforcement," "Wendler's policy applies to everyone" and "Wendler supports Spectrum WT"). Echoing the dissent's conclusions, after trial the district court held that President Wendler had not engaged in viewpoint discrimination because he openly supported Spectrum's message and other activities, but just not "the way they would do" so through a drag show. ROA.3877–78. But in *QEC*, the district court held that Texas A&M's similar policy was viewpoint discriminatory because it was based on the Board of Regents' "subjective" judgment about the offensiveness or propriety of the speech. 772 F. Supp.3d at 804–05.

* * *

These disagreements over the proper application of *CLS* pervaded every step of these courts' First Amendment analysis—from forum analysis to selection of the standard of review to application of constitutional principles. Rather than permit these consequential issues to be resolved by separate panels, judicial economy favors the en banc Court resolving these deep divides in the first instance. That will allow the Court to secure the uniformity of its precedent and ensure that it speaks with one voice in resolving questions that have divided judges in this Circuit for the past three years. *See* Fed. R. App. P. 40(b)(2)(A).

## II. The District Courts are Divided Over How to Determine Whether Conduct is Inherently Expressive.

The Court should grant the petition to resolve an additional question dividing courts in this Circuit: the proper test for determining whether conduct is inherently expressive and subject to First Amendment protection. The panel in *Spectrum I* did not split on this issue, as the court held that Spectrum's planned performances were likely inherently expressive and protected by the First Amendment, 151 F.4th at 721–26. But the district courts in *Spectrum* and *QEC* were sharply divided on the question, looking to Supreme Court precedents like *Texas v. Johnson*, 491 U.S. 397 (1989), and *Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*, 515 U.S. 557 (1995), and coming to divergent conclusions as to whether the planned drag shows were inherently expressive. To secure the uniformity of its precedent, the en banc Court should resolve this recurring issue now. Fed. R. App. P. 40(b)(2)(A)(D), 40(g).

In *Johnson*, the Supreme Court explained that, to determine "whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play," courts should consider "whether 'an intent to convey a particularized message was present, and

whether the likelihood was great that the message would be understood by those who viewed it.'" 491 U.S. at 404 (quoting *Spence v. Washington*, 418 U.S. 405, 410–11 (1974)). Six years later, the Court held in *Hurley* that expressive conduct need not convey "a narrow, succinctly articulable message" to warrant First Amendment protection. 515 U.S. at 569.

Application of these precedents has divided judges across this Circuit. In *Spectrum*, the district court held that Spectrum's planned drag show did not constitute inherently expressive conduct, because any messages that Spectrum intended the show to convey were "generalized" and in any event unlikely to be understood by those who view it. ROA.3863–65. The court rejected Spectrum's argument that the Supreme Court's decision in *Hurley* affirms that expressive conduct need not convey a "particularized" message to receive First Amendment protection. ROA.3865–75. And it disagreed with Spectrum's contention that its drag shows were akin to "live entertainment" that has long been protected by the First Amendment. ROA.3866. Finally, the court held that the First Amendment does not protect Spectrum's performances when (1) minors are present and (2) the performance has sexual content. ROA.3859–62.

By contrast, the district court in *QEC* came to the opposite conclusion on these points of law. "Applying *Hurley*," the court asked "whether [a] reasonable person would interpret" the drag show as conveying "some sort of message" and concluded that the drag show at issue was "protected expressive conduct." 772 F. Supp. 3d at 802. It explained that "[t]he performance is clearly intended to convey 'political, social, and cultural messages.'" *Id.* (quoting *Woodlands Pride v. Paxton*, 694 F. Supp. 3d 820, 844 (S.D. Tex. 2023), *vacated and remanded*, 168 F.4th 293 (5th Cir. 2026)). That is, it "provides a way for students to express messages supporting the LGBTQ+ community and educate the broader university community about LGBTQ+ culture through the performance." *Id.* (internal citation and quotation marks omitted). Contrary to the district court in *Spectrum*, the court likened the performance to a "theatrical performance" and held that "[i]t is long and well established that theatrical performances are protected forms of expressive conduct." *Id.* at 802–03. Similarly, the court rejected the University's argument that "only parts" of the drag show may be protected by the First Amendment, reasoning that "[t]he performance must be considered as a whole, like any other artwork," *id.* at 803—a

holding in tension with the district court's analysis in *Spectrum*, ROA.3860–61 (holding that drag shows involving certain sexual content may be unprotected).

* * *

These divides over fundamental principles of First Amendment law also warrant the en banc Court's attention to secure the uniformity of the Court's precedent on these questions of exceptional importance.

## III. These Issues Are Important and Recurring, Requiring the En Banc Court's Intervention.

This appeal and the *QEC* Appeal involve just two of several campus drag-performance prohibitions across Texas. The University of Texas System has imposed a prohibition on campus drag performances. *See* Jessica Priest, *University of Texas System bans drag shows in campus facilities*, Texas Tribune (Mar. 18, 2025), https://tinyurl.com/3r9n6e8t. And in February, the University of North Texas revoked its prior approval for a student group to perform its annual drag show on campus. *See* Matthew Winter, *GLAD drag show blocked from performing on campus after drag pause was lifted*, North Texas Daily (Mar. 19, 2026), https://tinyurl.com/y8k4hjt8.

The issues involved in this appeal therefore have statewide importance, and the en banc Court's resolution of them will provide needed clarity for students and universities throughout the Circuit that have operated on uncertain and conflicting legal terrain over the past three academic years.

These questions extend beyond Texas as well: at least two other circuits have recently considered the extent to which the First Amendment protects drag shows, albeit in slightly different contexts. *See, e.g.*, *Imperial Sovereign Ct. of Montana v. Knudsen*, 170 F.4th 820, 855–56 (9th Cir. 2026) (holding that "drag queen story hour" is inherently expressive conduct); *cf. HM Fla.-ORL, LLC v. Governor of Fla.*, 137 F.4th 1207 (11th Cir. 2025), *reh'g en banc granted, opinion vacated sub nom. HM Fla.-ORL, LLC v. Sec'y of Fla. Dep't of Bus. & Pro. Regul.*, 160 F.4th 1282 (11th Cir. 2025) (addressing constitutional challenge by business hosting drag shows to Florida law restricting the admission of minors to sexually explicit performances). The nationwide consideration of this issue in this Court's sister circuits underscores the importance of this appeal.

Given the significance of the issues, the diverging views of judges

across this Circuit, and the parties' and this Court's preparation before the preliminary-injunction appeal was mooted, hearing this appeal initially en banc would best serve judicial efficiency and consistency. It would also secure a speedy resolution and aid the parties. And it would benefit university officials, students, and other courts around the Nation. If this Court agrees to initially hear this appeal and the *QEC* Appeal en banc, the parties ask that the Court coordinate the oral argument for both cases.

## CONCLUSION

For these reasons, the parties respectfully request this Court grant the petition to initially hear this appeal en banc.

Date: May 15, 2026

Respectfully submitted,

/s/ JT Morris
JT Morris
Samuel Rudovsky
Foundation for Individual Rights and Expression
700 Pennsylvania Ave., S.E.
Ste. 340
Washington, D.C. 20003
Tel: (215) 717-3473
jt.morris@fire.org
sam.rudovsky@fire.org

Sara Berinhout
Adam Steinbaugh
Foundation for Individual Rights and Expression
510 Walnut Avenue, Suite 900
Philadelphia, PA 19106
sara.berinhout@fire.org
adam@fire.org

*Counsel for Appellant*

(Counsel for Appellee on Next Page)

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

William R. Peterson
Solicitor General

/s/ William F. Cole
William F. Cole
Principal Deputy Solicitor General
William.Cole@oag.texas.gov

Christopher J. Pavlinec
Assistant Attorney General

*Counsel for Appellee*

## CERTIFICATE OF SERVICE

This certifies that on May 15, 2026, in compliance with Rules 25(b) and (c) of the Federal Rules of Appellate Procedure, the undersigned served the foregoing via the Court's ECF filing system on all registered counsel of record.

/s/ JT Morris
JT Morris
Attorney for Plaintiff-Appellant

## CERTIFICATE OF COMPLIANCE

1. This petition complies with the type-volume limitation of Fed. R. Civ. P. 40(d)(3) because it contains 3,520 words, excluding the parts of the brief exempted by Fed. R. Civ. P. 32(a)(7)(B)(iii).

2. This petition complies with the typeface and typestyle requirements of Fed. R. Civ. P. 27(d)(1)(E) and Fed. R. Civ. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font, and in 12-point Century Schoolbook font for footnotes.

Dated: May 15, 2026

/s/ JT Morris
JT Morris
Attorney for Plaintiff-Appellant